Victor **ROMAN FIGUEROA**, et al., Plaintiffs,

v.

Gerardo **TORRES MOLINA**, et al., Defendants.

Civ. No. 88–2105 (JAF).

United States District Court, D. Puerto Rico.

Sept. 19, 1990.

José F. Quetglas–Alvarez, José F. Quetglas–Jordán, Eric M. Quetglas–Jordán, San Juan, P.R., for plaintiffs.

Héctor Rivera–Cruz, Secretary of Justice, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, P.R., for defendants.

OPINION AND ORDER

FUSTE, District Judge.

The plaintiffs in this suit are Héctor Román Rivera, a minor, and his parents Victor and Awilda Román. The suit was brought against officers and officials of the Police Department of the Commonwealth of Puerto Rico, including former Superintendent of Police Carlos López–Feliciano, for violations of plaintiffs' civil rights pursuant to 42 U.S.C. §§ 1983 and 1988. The original complaint was filed on December 29, 1988. On August 25, 1989, a Fed.R.Civ.P. 12(b)(6) motion to dismiss was filed. On October 26, 1989 (Docket Document No. 49), we dismissed the complaint as to Superintendent López–Feliciano. 725 F.Supp. 651.

Following said dismissal, plaintiffs made a Motion for Relief From Judgment. Before ruling on this motion, we ordered that Superintendent López–Feliciano's deposition be taken and submitted to the court (Docket Document Nos. 51A, 63). After reviewing the transcript of the deposition, we granted plaintiffs' motion to reconsider and granted leave to amend the complaint (Docket Document No. 73). Further, because we believed that the case was ripe for summary judgment consideration of Superintendent López–Feliciano's liability under section 1983, we ordered the parties to submit cross-motions for summary judgment accompanied by memoranda of law on the issue of supervisory liability.

Having received the requested documents, we now grant defendant López–Feliciano's motion for summary judgment and, correspondingly, deny plaintiffs' motion for partial summary judgment as to the former police superintendent.

## I.

### Factual Background

The facts alleged in the Second Amended Complaint are the following. On January 2, 1988, plaintiff, Héctor Román Rivera, while riding a motorcycle, was stopped by defendant police officer Gerardo Torres Molina ("Officer Torres") for various traffic violations.[1] After encountering some negative resistance from Román Rivera, Officer Torres, using his nightstick, struck the plaintiff on the back of the head, causing an open wound. Officer Torres radioed for additional assistance and defendant Sergeant Luis Méndez Morales ("Sgt. Méndez"), Officer Torres' immediate supervisor, arrived at the scene. Along with the traffic violations, plaintiff was also charged with a misdemeanor count of resisting arrest. It is claimed that Sgt. Méndez, in contravention of established police procedure, signed the arrest report without investigating the circumstances surrounding the incident by interviewing witnesses present at the scene.[2]

Also included as defendants were police supervisory personnel, including the precinct commander, the Deputy Superintendent of the Bureau on Inspection and Disciplinary Matters, and Carlos López–Feliciano, the former Superintendent of Police.

With respect to Superintendent López–Feliciano, plaintiffs allege that he: failed to implement and enforce proper supervisory and training programs which would provide on-going training for police officers as to the use of force; failed to properly train supervisors to implement departmental

regulations and procedures with respect to the investigation of citizen complaints against police officers; and failed in his duty to enforce the regulations of the Commonwealth's Police Department.

## II.

### Standard for Summary Judgment

The parties are before the court on motions for summary judgment pursuant to Fed.R.Civ.P. 56. A court should grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir. 1988). The two inquiries which the court must make before granting a motion for summary judgment relate to the *materiality* and the *genuineness* of the factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In order to determine whether the factual dispute between the parties is "material", the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725 at 93–95 (1983). Therefore, the substantive law relating to the supervisory liability *of an individual* in section 1983 actions will be examined to determine which facts are material as to Superintendent López–Feliciano's liability.

---

**1.** The four violations with which plaintiff Héctor Román Figueroa was charged were: (1) driving a three-wheel motor vehicle without a license plate; (2) driving without wearing a helmet; (3) conducting a motor vehicle without a license; and (4) refusing to detain the vehicle when ordered by a police officer. Plaintiff pleaded guilty as to the first three charges and, after a trial, was found guilty of the fourth violation.

**2.** The arrest report would serve as a basis for the filing of a criminal complaint against Róman Rivera.

The second determination relates to the "genuineness" of the dispute about the material facts. In *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, the court explicitly states a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." It is not required that a party asserting the existence of an issue of material fact resolve it conclusively in order to proceed to trial, but rather that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

Further, when a motion for summary judgment is made, it is important to be precise as to the parties' burdens of production and persuasion. "The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Wright, Miller & Kane § 2727; *Celotex Corp v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986). The manner in which the moving party must make this showing will depend upon which party, at trial, will bear the burden of persuasion as to the challenged claim. Because plaintiffs will bear the burden of persuasion at trial as to Superintendent López–Feliciano's liability under section 1983, Superintendent López–Feliciano may discharge his Rule 56 burden of production in one of two ways.

> First, the moving party may submit affirmative evidence that negates an essential element of the non-moving party's claim. Second, the moving party may demonstrate to the court that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim.

*Celotex Corp.,* 477 U.S. at 331, 106 S.Ct. at 2557; Fed.R.Civ.P. 56(e), (f). Examining the cross-motions for summary judgment with the supporting materials, we find that Superintendent López–Feliciano has discharged his burden of production and that the evidentiary materials submitted by the plaintiffs fail to demonstrate the existence of a "genuine issue" which would require a trial.

## III.

### *Standard for Supervisory Liability*

The initial inquiry relating to a supervisory official's liability based solely on section 1983 has two parts. First, "whether the conduct complained of was committed by a person acting under color of state law," and, secondly, "whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985). The first requirement was met since Superintendent López–Feliciano was acting in his official capacity as Superintendent of Police with respect to the actions which form the basis of plaintiffs' complaint. The second part of the inquiry has two elements. The first element requires that there was, in fact, a deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Voutour,* 761 F.2d at 819. Here, the deprivation would be the use of excessive force in the detention and arrest of plaintiff Román Rivera. The second, and more difficult question, is whether Superintendent López–Feliciano's conduct can be said to have caused this deprivation, so as to make the superintendent liable under section 1983. *Voutour,* 761 F.2d at 819.

Because Superintendent López–Feliciano cannot be held vicariously liable under a theory of *respondeat superior, Monell v. Department of Social Services,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978) (citing *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976)), plaintiffs must show that (1) Superintendent López–Feliciano's own acts or omissions deprived plaintiffs of protected rights, *Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989); *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989); (2) his "conduct or inaction amounted to a reck-

less or callous indifference to the constitutional rights of others;" *Gutiérrez–Rodríguez*, 882 F.2d at 562; *see Germany v. Vance*, 868 F.2d 9, 17–18 (1st Cir.1989); and (3) "there must be an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials." *Gutiérrez–Rodríguez*, 882 F.2d at 562 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)). Examining the parties' submitted materials, we find that plaintiffs have failed to make the necessary showing and that defendant, Superintendent López–Feliciano, is entitled to summary judgment as a matter of law.

## IV.

### Discussion

█ Plaintiffs claim that Superintendent López–Feliciano is liable under section 1983 because he directly participated in unconstitutional conduct; failed to discipline officers under his control; implemented unconstitutional policies with respect to police conduct and use of force; had knowledge of and acquiesced to the custom and practice of excessive use of force by police, and failed to supervise and train officers and supervisory personnel under his control. In support of these claims, plaintiffs submit the opinion of an expert in police procedure (Docket Document No. 77, Exhibit XI); depositions of Officer Torres, Sgt. Méndez, other police officials, and that of Superintendent López–Feliciano (Docket Document No. 72); and police force statistics relating to complaints made against police officers and their disposition by the police investigatory apparatus.

A careful review of the documents leads us to conclude that the conduct of Superintendent López–Feliciano while in office comes nowhere near to the "reckless or callous indifference" standard necessary to find section 1983 liability.

Superintendent López–Feliciano was Superintendent of Police from March 2, 1986 to December 31, 1988. As police superintendent, Mr. López–Feliciano was responsible for establishing all policies and procedures of the Police Department. He issued General Orders and Personnel Regulations which served as the guidelines for the department, and as the ultimate supervisor, he was responsible for ensuring that the General Orders and Personnel Regulations were carried out. He was at the head of the police disciplinary system and reviewed all complaints filed against individual officers. Superintendent López–Feliciano was the only one with the authority to suspend, fire, or otherwise discipline an officer. Also, as to promotions, the superintendent had the authority to promote officers up to the rank of captain. Any promotion above that rank had to be confirmed by the Governor.

During his tenure in office, Superintendent López–Feliciano implemented a number of policies and issued General Orders with respect to issues involved in the present suit. He increased the number of Auxiliary Superintendencies from two to six with the rationale that operational areas of smaller sizes having specific responsibilities would increase efficiency. Included in these superintendencies was the Auxiliary Superintendency for Inspection and Disciplinary Matters, ("ASIDM"), the agency delegated by the superintendent to investigate complaints filed against police officers. Superintendent López–Feliciano also issued General Orders relating to the norms and procedures used by the ASIDM, (General Order 87–3, *Exhibit C*, Defendant's Motion For Summary Judgment), as well as norms and procedures used in the investigation of complaints at the administrative level. This latter Order also defined prohibited police conduct in the course of officers carrying out their official duties. (General Order 87–14, *Exhibit E*, Defendant's Motion for Summary Judgment). Superintendent López–Feliciano also created an Auxiliary Superintendency for Education and Training, ("ASET"), along with two regional police academies, in order to provide continuing education for police officers. Superintendent López–Feliciano estimated that between the end of 1986, when the program began, and the end of Superintendent López–Feliciano's term in 1988, over 7,000 veteran police offi-

cers received training through these academies. (Deposition, Carlos López–Feliciano at 35–37). Also, Superintendent López–Feliciano promulgated General Order 88–2 which dealt with the norms and procedures for dealing with minors. (*Exhibit I*, Defendant's Motion for Summary Judgment).

These administrative decisions provide sufficient evidence to establish that Superintendent López–Feliciano was attempting to provide mechanisms both to raise the level of professionalism in the Police Department and to investigate and, where appropriate, sanction improper police conduct. Having stated this does not end our inquiry. For even though there are policies in place, supervisory personnel can still be found liable under section 1983 when the plaintiffs can meet the two requirements for demonstrating an unconstitutional police department custom. Plaintiffs must show

> [f]irst, the custom or practice must be attributable to the municipality. In other words, it must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it and yet did nothing to end the practice. [Citations omitted.] Second, the custom must have been the moving force behind the deprivation of constitutional rights.

*Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989).[3] Here, plaintiffs argue that the events which form the basis of the suit demonstrate a pattern or custom with respect to the use of excessive force and that Superintendent López–Feliciano, having actual or constructive knowledge of this custom, failed to intervene, and this failure constituted the moving force behind plaintiffs' constitutional deprivation. As evidence of this custom, plaintiffs submit the official record of one prior investigation of Officer Torres and around ten investigations of Sgt. Méndez, dating back to 1971, all but one relating to Sgt. Méndez's conduct as a regular police

officer, not as a supervisor. The investigations of these officers simply do not provide us with sufficient evidence to form an inference that Superintendent López–Feliciano had either actual or constructive knowledge of a custom or pattern of the use of excessive force. Having acknowledged the policies implemented by Superintendent López–Feliciano during his tenure, the changes he inaugurated would be sufficient evidence to show that he did, in fact, intervene to implement positive changes at the policy level. In any case, plaintiffs have failed to make a sufficient showing of a custom or pattern that would generate an issue of material fact for trial.

It is instructive here to compare First Circuit cases where police chiefs have been held liable for section 1983 violations. In *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553 (1st Cir.1989), the Court found that sufficient evidence was presented at trial for a jury to impose section 1983 liability against another former Superintendent of Police of Puerto Rico. Here, the claim arose when the plaintiff was fired upon by police officers as he attempted to flee from unknown persons "brandishing firearms". The superintendent was found liable because: (a) he had knowledge of numerous complaints against the defendant officer and he took no action concerning him other than dismissing the charges; and (b) his disciplinary system was impotent and wholly inadequate. *Gutiérrez*, 882 F.2d at 564. However, in *Gutiérrez*, the officer who committed the unconstitutional act had thirteen separate civilian complaints filed between 1980 and 1983; the Superintendent personally signed twelve of the thirteen letters dismissing complaints; and the superintendent refused to consider an officer's prior history of complaints when reviewing an officer's conduct, thus making it very difficult to identify a pattern of misbehavior or misconduct. *Id.* at 565. None of these factors are present here. Superintendent López–Feliciano, having the entire record of the officers before him,

---

**3.** For purposes stated herein, the cited municipality cases are applicable even though we are dealing with a state police department.

had only one prior complaint against Officer Torres.[4]  As for the ten or so complaints against Sgt. Méndez which dated back almost eighteen years, of which only one related to Sgt. Méndez's role as a supervisor, almost all were committed prior to, and addressed before Superintendent López–Feliciano's tenure began.[5]  Further, it was precisely the concern to make more effective the police disciplinary system that Superintendent López–Feliciano created the ASIDM and promulgated General Orders to more effectively conduct investigations of improper conduct by police officers.

The facts of this case are quite different from those in *Voutour v. Vitale*, 761 F.2d 812 (1st Cir.1985).  There the Chief of Police was found liable as a supervisor in that he violated state law in not providing police officers with *required* training.  In *Voutour*, the officer never attended a police training school within nine months of his appointment as required by a Massachusetts statute.  *Voutour*, 761 F.2d at 821.  Further, there was also a letter detailing incidents of unjustified use of service revolvers and making references to the futility of training some officers in the use of firearms.  *Id.* at 822.  All of this evidence raised a triable issue of fact as to whether the police chief was *grossly* negligent with respect to police training.  Here, both Officer Torres and Sgt. Méndez attended the police academy.  While it is true that there was no record of followup, in-service training in the files of the officers, one of Superintendent López–Feliciano's initial acts as Superintendent was to establish training academies where officers would go for continuing education and training.  A reasonable inference could be made that between the beginning of the program in December of 1986 and January 2, 1988, the date of the incident, not all members of the Puerto Rico police force had had the opportunity to participate in the on-going training program.  However, under no circumstance would this deficiency demonstrate "callous indifference" or represent "gross negligence", the standard necessary for a supervisor to be held liable for the acts of subordinates.

In *Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989), the court found that there was a facially unconstitutional custom of breaking down doors without a warrant when arresting a felon.  The specific facts which gave rise to section 1983 liability were that an Everett, Mass. police officer, after being bested in a barroom fight, called for police assistance, and with four other officers, sought out plaintiffs in a hotel room and beat them up so severely that one, Vincent Bordanaro, died.  The First Circuit found that the police chief had constructive knowledge of the practice of warrantless entrances.  Police officers themselves admitted that this was normal operating procedure for the department.  871 F.2d at 1156.  This particular occurrence appeared to be no different from the normal operating procedure of the Everett police.  In the case at bar, no practice has been identified that would show that the normal policy of the Puerto Rico Police Department would be to use excessive force while detaining individuals during traffic stops.  Also, unlike *Bordanaro*, this is not the case of a facially unconstitutional custom.  Rather, at most, it is the action of isolated individual officers.  If we were to hold Superintendent López–Feliciano liable for each and every constitutional violation committed by any officer of the Puerto Rico Police Department, a force with over 10,000 officers, we would be creating a situation of absolute liability for whomever sits in the superintendent's chair, clearly an untenable position.

---

**4.**  The other complaint against Officer Torres related to an incident which occurred on October 15, 1987.  In the administrative investigation submitted to Supt. López–Feliciano, Colonel Aponte reported that the complainant, a minor, initiated a dispute with Officer Torres and that only after being attacked, did Officer Torres and his partner respond by handcuffing and arresting the youth.  With this information, Supt. López–Feliciano exonerated Officer Torres.

**5.**  Also, Sgt. Méndez was disciplined as a result of some of the investigations conducted by the police.

**245**

### V.

*Conclusion*

In sum:

1. Summary judgment is GRANTED in favor of defendant Carlos López–Feliciano since plaintiffs have raised no genuine issue as to any material fact relating to supervisory liability.

2. Plaintiffs' partial summary judgment motion as to defendant Carlos López–Feliciano is DENIED.

IT IS SO ORDERED.