Lydia E. MARTINEZ CORREA, etc.,
et al., Plaintiffs,

v.

Carlos LOPEZ FELICIANO, et
al., Defendants.

Civ. No. 88–2029 (JAF).

United States District Court,
D. Puerto Rico.

March 14, 1991.

Howard Charles, Jorge Ortiz–Brunet, Ortiz–Toro & Ortiz–Brunet, San Juan, P.R., for plaintiffs.

Dept. of Justice, Federal Litigation Div., Com. of Puerto Rico, Saldaña, Rey, Moran & Alvarado, San Juan, P.R., for López–Feliciano.

## OPINION AND ORDER

FUSTE, District Judge.

On October 14, 1988, defendant Gary Bosque, an off-duty police officer, shot and killed Angel Ríos Molina in a bar in Arecibo, Puerto Rico. Plaintiffs, family members of the decedent, filed this suit pursuant to 42 U.S.C. § 1983, alleging deprivation of decedent's constitutional rights. Plaintiffs also invoked the pendent jurisdiction of this court alleging violations of Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141, 5142. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343(a)(3), and (4). Included as defendants are various police officials of the Puerto Rico Police Department who were responsible for Bosque's admission, training, and supervision. Plaintiffs have alleged that defendants were grossly negligent in their failure to properly screen Bosque for entrance onto the police force and in their failure to properly follow administrative procedures to discipline or discharge Bosque prior to the shooting. These failures by supervisory personnel, plaintiffs claim, were the proximate cause of the death of Ríos Molina. Before the court are the parties' cross-motions for summary judgment. For the reasons outlined below, we GRANT the summary judgment motions of Carlos López Feliciano, Miguel Velázquez, Francisco Figueroa, and José Prats. We DENY the plaintiffs' and the remaining defendants' summary judgment motions. Further, we DISMISS the claims of all plaintiffs, except those of decedent's wife, in her representative capacity, and those of her minor child.

### I.  Facts

Plaintiffs in the present action are decedent's common-law wife, Lydia Martínez Correa, and his seven-year-old child, Angel Omar Ríos, both of whom are residents of Puerto Rico. Also included as plaintiffs are decedent's mother, two brothers, three aunts, and two cousins, all of whom reside in various states other than the Commonwealth of Puerto Rico. Defendants who are the subject of plaintiffs' summary judgment motion are Carlos López Feliciano, former Superintendent of the Police Department of Puerto Rico; Aida M. Vélez, Director of the Human Resources Division; Sergeant Juan Meléndez, and Captain Isodoro González, Bosque's former supervisors. The spouses of the above-named police officials and the conjugal partnerships formed by them are included as party defendants. Also, Lieutenant Miguel Velázquez, Director of the Drug and Narcotics Division in Arecibo, Captain Francisco Figueroa, and Sergeant José Prats, also of the Drug and Narcotics Division in Arecibo, were named as defendants in the Second Amended Complaint, Docket Document No. 24, and have moved the court for summary judgment. On April 13, 1989, the Clerk of the Court filed an Entry of Default against defendant Bosque, leaving solely the supervisory personnel as defendants actively litigating the action.

The facts surrounding the present action revolve around Officer Bosque's fitness to serve as a police officer and the acts or omissions by officials of the Police Department of Puerto Rico in Bosque's recruitment, training, and supervision. Bosque began the application process for the Police Department in 1986. After failing Part I of the Registration exam in 1986, he retook the test in 1987 and passed.[1]

---

**1.** Plaintiffs imply that Bosque's 1987 score of     51.33 was "suspiciously high" after scoring 30.33

After passing Part I of the examination, Bosque was administered a battery of psychological exams by the Human Resources Division of the Police Department ("Human Resources"). Defendant Vélez, as director of the division, was ultimately responsible for the administration, interpretation, and evaluation of the exams. According to plaintiffs, Bosque's performance on these tests demonstrated that, psychologically, he was a borderline candidate for duty as a police officer. While the test results themselves were not submitted to the court, plaintiffs claim that the tests used were improperly administered, scored, and validated. Also, plaintiffs claim that certain of the tests were not completed by Bosque. In support of these allegations, plaintiffs submitted a review of Bosque's psychological evaluation by Dr. Ricardo del Castillo, Ph.D., a clinical psychologist. Dr. del Castillo identified the tests taken by Bosque as a "screening battery," a group-administered test used in order "to have a quick and 'efficient' assessment" of candidates. (Docket Document No. 39, Exhibit 3 at 4). According to Dr. del Castillo, the types of scores Bosque received revealed that he should have been considered a borderline case and, as such, should have had follow-up review in order to verify the accuracy of the tests themselves and to further evaluate Bosque's aptitude for service as a police officer. Dr. del Castillo faulted defendant Vélez for not actively monitoring the clinicians under her supervision in their evaluation of clinical findings and for her "inability to create or properly supervise a system of quality control" in the Human Resources Department. (Docket Doc-

ument No. 39, Exhibit 3 at 8).[2] Despite the incomplete evaluation, Bosque was found eligible to join the Police Department and began training at the Police Academy in August 1987.

After finishing his training at the Police Academy, Bosque was assigned in January 1988 to the Vega Baja Vice Control unit. He remained in this unit until September 19, 1988. During this period defendant Meléndez was Bosque's immediate supervisor. In Meléndez' deposition he stated that on two occasions between January and April 30, 1988 he had noticed the odor of alcohol on Bosque's breath and, on at least one occasion, counseled him about the excessive use of alcohol while off-duty. (Docket Document No. 39, Exhibit 5 at 10).

The major incident prior to the October shooting which plaintiffs claim demonstrated both Bosque's unfitness for duty as a police officer and the gross negligence of police supervisory personnel occurred during the evening of April 29–30, 1988. From the police administrative investigation report (Docket Document No. 39, Exhibit 6), it was established that Bosque, after participating in a local fiesta, was walking home. However, because of excessive alcohol consumption, he failed to complete the journey. Instead, he was found unconscious in a back alley at six o'clock the following morning. He was disoriented and there was a strong smell of liquor on his breath. His police-issue revolver was found about a yard away, laying on the ground. Sergeant David Román, the supervisor called to the scene, awakened Bosque and took him to the local police station in Arecibo.

---

in his first attempt in 1986 (a passing score of 46 is required for Part I). (Docket Document No. 39, *Plaintiff's Memorandum of Law*, at 1). However, since plaintiffs produce no other evidence which would explain *why* the second score was suspiciously high, we draw no inference from the difference in Bosque's scores.

2. Plaintiffs also submitted excerpts of defendant Vélez' deposition where they claim that she admitted that, faced solely with Bosque's file and nothing else, she would not have recommended him for service as a police officer. Docket Document No. 39, Exhibit 14 at 58. However, earlier in her deposition, Vélez stated that an incomplete battery is solely "a negative factor as

an entrance indication." *Id.* at 56. We note here that plaintiffs have submitted very limited excerpts of the deposition. While they are certainly within their right to decide which evidence should be submitted, we remind the plaintiffs that they have the burden of proof in demonstrating that the Rule 56(c) test—"no genuine issue as to any material fact"—has been satisfied in order to be entitled to judgment as a matter of law. *See* C. Wright, A. Miller, and M. Kane, *10A Federal Practice and Procedure* § 2727 (1983, 1990 Supp.). If the moving party does not put the court in a position to determine whether a genuine issue exists, we are bound to deny summary judgment and to proceed to trial.

Román took possession of Bosque's firearm and delivered it to the local commander. At the station, Román explained to Bosque that he would have to submit to analysis to determine the amount of alcohol in his system. Román explained that Bosque could refuse to submit to the analysis but that, if he did so refuse, he would be cited for a "fault" (violation) of police regulations. At first, Bosque agreed to submit to the test but then left the police station for about a half hour. When asked why he had left the station, Bosque told the supervisors there that he went to buy coffee and cigarettes. The analysis was never conducted.

In the conclusions of the police incident report, it was found that Bosque had violated four provisions of the police personnel rules.[3] Also, in a memorandum dated May 2, 1988 which Colonel Héctor Laureano, the Arecibo Area Commander, sent to Captain Angel Pagán, the Division Director of Administrative Investigations for Arecibo, Sergeant Román described the facts of the April 30th incident. At the bottom of page two there appears to be a memo to Colonel Laureano from Captain Rosario, Arecibo District Commander, saying that Rosario suspects that this might be a situation dealing with the use of drugs and recommending an administrative investigation, as well as implementation of the procedures found in General Order 87-4IX(H).

Thereafter, defendant Meléndez was informed of the incident and he, in turn, reported it to his supervisor, defendant González, Coordinator of Vice Control Investigations. (Docket Document No. 39, Exhibit 9). Meléndez related in the report that Sergeant Román had arranged with police personnel at the Arecibo Area Commander's office to have Bosque's service revolver returned to him. Meléndez contacted Colonel Laureano, who told him "that he had referred the case for Area

Administrative Investigation" and that Bosque should be sent to retrieve the firearm. The final administrative report, dated December 22, 1988, incorporated the facts as outlined above and also found Sergeant Román had committed a serious violation in allowing Bosque to leave the precinct before the analysis was administered. (Docket Document No. 39, Exhibit 8).

In mid-September 1988, Bosque was transferred to the Arecibo Drug and Narcotics Division. Because of accumulated vacation time, he had only reported for duty a few days when the shooting in the bar took place.

The circumstances of the October 14, 1988 shooting were that Bosque and decedent were in the bar shooting pool and drinking. The police administrative investigation of the shooting, (Docket Document No. 39, Exhibit 11), revealed that there did not seem to be any dispute between the two and that the gun simply went off hitting the decedent in the chest. He died en route to the hospital. Subsequently, Bosque was convicted of involuntary manslaughter and was given a three-year suspended sentence. *See* Docket Document No. 39, Exhibit 12.

## II. *Standards*

### A. Summary Judgment

The parties are before the court on motions for summary judgment pursuant to Fed.R.Civ.P. 56. A court should grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir. 1988). The two inquiries which the court

---

**3.** *The four provisions state:*
(1) To demonstrate manifest incapacity, ineptness, carelessness, partiality or negligence in the undertaking of one's obligations, functions, and responsibilities.
(2) To leave police-issue firearms or any other firearms that one is authorized to carry or possess within the reach of persons which

can use them illegally or to permit other persons to use them, or to not take the required precautions with them.
(3) To excessively use alcoholic beverages or to use alcoholic beverages on duty.
(4) To follow injurious, immoral, licentious conduct in detriment to the Police Force.

must make before granting or denying a motion for summary judgment relate to the *materiality* and the *genuineness* of the factual dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

In order to determine whether the factual dispute between the parties is "material", the substantive law will identify which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2725 at 93–95 (1983). Therefore, the substantive law relating to the supervisory liability of police officials in section 1983 actions will be examined to determine which facts are material with respect to defendants' alleged liability.

The second determination relates to the "genuineness" of the dispute about the material facts. In *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, the court explicitly stated that a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." It is not required that the party opposing summary judgment, in asserting the existence of an issue of material fact, resolve it conclusively in order to proceed to trial, but rather that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

Further, when a motion for summary judgment is made, it is important to be precise as to the parties' burdens of production and persuasion.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. [citations omitted]. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. [citation omitted]. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion until the Court finds that the moving party has discharged its initial burden of production. [citations omitted].

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986); 10A Wright, Miller & Kane § 2727. The initial burden of production imposed on the moving party is to make a prima facie showing that it is entitled to summary judgment and, where it is the moving party who will have the burden of persuasion at trial, the motion must be supported by credible evidence "that would entitle it to a directed verdict if not uncontroverted at trial." *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557. Only then does the burden of production shift to the party opposing the motion. Where it is the nonmoving party who will have the burden of persuasion at trial, the moving party may satisfy the Rule 56 burden of production in one of two ways.

First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* 10A Wright, Miller & Kane § 2727 at 130–31; Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745, 750 (1974).

*Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557. When the moving party chooses the second option and moves for summary judgment on the ground that the nonmoving party— who will bear the burden of persuasion at trial—has no evidence, the moving party "must affirmatively show the absence of evidence in the record." *Celotex*, 477 U.S. at 331–32, 106 S.Ct. at 2556–58. Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved *against* the moving par-

ty. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

### B. Standard for Supervisory Liability

■ The initial inquiry relating to liability under section 1983 has two parts. First, "[w]hether the conduct complained of was committed by a person acting under color of state law;" and secondly, "whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Voutour v. Vitale*, 761 F.2d 812, 819 (1st Cir.1985), *cert. denied, Saugus v. Voutour*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Here, the first requirement was met since the defendants all were acting in their official capacities as supervisory personnel in the Police Department. Defendants make the argument that since Bosque was off duty at the time of the shooting, his action did not occur "under the color of law," and, instead, constituted a purely personal act. Defendants therefore argue that no section 1983 action can lie. We disagree. The gravamen of plaintiffs' claim is that *prior* to the October, 1988 shooting defendants failed to properly screen, train, supervise, and discipline (or dismiss) Bosque. Plaintiffs base liability on defendants' actions (and omissions) while acting as supervisory personnel and not on whether Bosque was on or off duty at the time of the shooting. According to plaintiffs, if defendants had not been grossly negligent in performing their supervisory duties, Bosque's unfitness to serve as a police officer would have been discovered long before the date of the shooting and he would have been disarmed and discharged. Consequently, the first prong for finding liability under section 1983 has been met. *See Pereira–González v. López–Feliciano*, 731 F.Supp. 574 (D.P. R.1990).

With respect to the second part of the inquiry—whether defendants' conduct deprived plaintiffs of a protected right—the First Circuit has ruled that supervisory officials

> can be held liable for the behavior of his or her subordinates if (1) the behavior of such subordinates results in a constitutional violation and (2) the official's action or inaction was "affirmative[ly] link[ed]," *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 [105 S.Ct. 2427, 2436, 85 L.Ed.2d 791] (1985), to that behavior in the sense that it could be characterized as "supervisory encouragement, condonation, or acquiescence" *or* "gross negligence amounting to deliberate indifference." *See Bohen* [*v. City of East Chicago*] 799 F.2d [1180] at 1189 [ (7th Cir. 1986) ].

*Lipsett v. University of Puerto Rico*, 864 F.2d at 902 (emphasis in original).

■ Here, the first prong of the *Lipsett* test has been met in that Bosque's action deprived decedent of life without due process of law in violation of the fourteenth amendment.[4]

■ The second, and more difficult question, is whether the police supervisory personnel can be said to have caused this deprivation, so as to make them liable under section 1983. *Voutour*, 761 F.2d at 819. Because defendants cannot be held vicariously liable for subordinates' actions under a theory of *respondeat superior, Monell v. Department of Social Services*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976)), plaintiffs must establish that the supervisors' own acts or omissions deprived plaintiffs of protected rights. *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989); *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). Also, the supervisory conduct or inaction must have

---

**4.** In the alternative, the First Circuit has recognized that where law enforcement personnel use excessive or unreasonable force or violence resulting in personal injury, the person is deprived of his or her liberty interest without due process of law. *Voutour v. Vitale*, 761 F.2d 812, 818 n. 3 (1st Cir.1985); *see Landrigan v. Warwick*, 628 F.2d 736, 741–42 (1st Cir.1980).

been intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutiérrez–Rodríguez,* 882 F.2d at 562; *see Germany v. Vance,* 868 F.2d 9, 17–18 (1st Cir.1989). In *Gutiérrez–Rodríguez,* 882 F.2d at 562, the First Circuit found that there was "no difference of moment" between earlier cases which used the "gross negligence amounting to deliberate indifference" standard, *see Lipsett,* 864 F.2d at 902; *Guzmán v. Cranston,* 812 F.2d 24, 26 (1st Cir.1987); *Voutour,* 761 F.2d at 820, and the "reckless and callous indifference" standard, *see Germany,* 868 F.2d at 17–18, and held that "indifference that rises to the level of being deliberate, reckless, or callous, suffices to establish [supervisory] liability under section 1983." Finally, "there must be an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials." *Gutiérrez–Rodríguez,* 882 F.2d at 562 (quoting *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976)). Failure of the supervisor to take remedial action against an individual officer after numerous complaints; employment by the supervisor of a wholly inadequate and impotent disciplinary system that permitted officers to continue to violate citizens' rights; *Gutiérrez–Rodríguez,* 882 F.2d at 564; and demonstration of a pattern of violations "so striking as to allow an inference of supervisory encouragement, condonation, or even acquiescence," *Lipsett,* 864 F.2d at 902 (quoting *Voutour,* 761 F.2d at 902), all have been bases for finding supervisors liable under section 1983. As to the last ground—inaction in the face of a pattern of violations—an important factor for making this determination is whether the supervisors have been put on notice as to the violations and have taken affirmative steps to correct them. *See Lipsett,* 864 F.2d at 902.

**5.** The relevant portion of Rule 12(b) states:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

Having examined the standards both for the granting of summary judgment and for supervisory liability under section 1983, we now apply these standards to the facts of this case.

### III. *Discussion*

Because there are various pending motions and numerous plaintiffs and defendants, we will group the various parties in order to discuss and to rule on the motions before the court.

### A. Defendants Prats, Figueroa, and Velázquez

■ Defendants Prats and Figueroa were first named as party defendants in plaintiffs' Amended Complaint, Docket Document No. 14. Thereafter, they joined defendants López Feliciano and Velázquez in their Motion for Summary Judgment. Docket Document No. 19. Whether we treat Prats and Figueroa's motion as a pre-answer, Fed.R.Civ.P. 12(b)(6) motion and convert it to a Rule 56 summary judgment motion pursuant to the last sentence of Rule 12(b) [5] or simply treat it as a Rule 56 motion made solely on the basis of the complaint, recognizing that it is the functional equivalent of a Rule 12(b)(6) motion, *see Blum v. Morgan Guaranty Trust Co.,* 709 F.2d 1463, 1466 (11th Cir.1983); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2713 at 594–97, the result is the same. Because we rely on materials outside the pleadings and the parties have had ample opportunity to present relevant material, we find that we are in the ambit of Rule 56 and GRANT defendants Prats, Figueroa, and Velázquez' motions for summary judgment.

Prats is described in the Second Amended Complaint as being Bosque's supervisor at the Drug and Narcotics Division in Arecibo. Second Amended Complaint ¶ 11. Velázquez and Figueroa, in turn, are Prats' supervisors. Further, Prats and Figueroa

are included among the defendants who were in supervisory positions and who "knew or should have known about agent Gary Bosque's negative conduct and dangerous condition...." Second Amended Complaint ¶ 18. They were also included among defendants who "knew or should have known that defendants had been involved in prior cases of gross supervisory negligence, alarming conduct, or excessive use of force ...," Second Amended Complaint ¶ 46, and who "recklessly, intentionally, or by gross negligence tolerated and acquiesced to continued violations of citizens' rights." Second Amended Complaint ¶ 47.

Applying the summary judgment analysis outlined above, we find that these defendants have met their burden of production by demonstrating that the non-moving party's evidence is insufficient to establish supervisory liability under section 1983. Plaintiffs have not alleged nor have they produced evidence of specific acts on the part of these defendants which would demonstrate that they violated plaintiffs' constitutional rights. Figueroa, Velázquez, and Prats formed the chain of command in the Drug and Narcotics Division in Arecibo, Bosque's new assignment in September, 1988. Bosque was only on duty for a few days before the shooting took place. These defendants were line officers and not, as plaintiffs allege, policymakers in the Police Department. No allegations were made that *they* failed to take remedial action against Bosque. Therefore, since plaintiffs have failed to come forward with sufficient evidence as to one element necessary to establish supervisory liability under section 1983, defendants' Figueroa, Velázquez, and Prats are entitled to summary judgment.

## B. Defendant López Feliciano

■ Plaintiffs, in their memorandum of law supporting their motion for summary judgment, Docket Document No. 39, and in their opposition to defendant López Feliciano's motion, Docket Document No. 22, present the following facts as to why the former superintendent of police should be held liable for Ríos Molina's death. Plaintiffs state that López Feliciano:

—Never sent to defendant González any memoranda as to the problem of alcoholism in the police department nor any memoranda instructing line officers with appropriate procedures for dealing with officers with emotional or substance abuse problems.

—Failed to make use of the authority given him to disarm and suspend Bosque after the April 30th incident.

—Failed to provide the Human Resources division with sufficient resources to adequately screen new candidates for the department.

—Failed to minimally train supervisors to deal with officers with substance abuse and emotional problems.

—Promulgated General Order 87–14 which, plaintiffs allege, "tacitly encouraged the commission of civil rights violations" and made it difficult to conduct administrative investigations since the officer being investigated was informed of his absolute right to remain silent during an administrative investigation.

—Subverted the screening process by hiring an unusually large number of police personnel in 1987, thus allowing unqualified candidates, like Bosque, to join the force.

To support these factual allegations, plaintiffs use depositions of codefendants, as well as excerpts from General Order 87–14. Again, applying the above standards, we find that defendant López Feliciano's motion for summary judgment should be GRANTED.

Defendant López Feliciano has met his burden of production under Rule 56 by demonstrating that plaintiffs' evidence is insufficient to establish supervisory liability under section 1983. Plaintiffs, in turn, have not met their burden of production by producing evidence to show that there are genuine issues for trial. Therefore, summary judgment is warranted.

Plaintiffs seek to base liability on the fact that the former superintendent never *personally* communicated with Captain González about procedures supervisors

should follow when they suspected that an officer had substance abuse or emotional problem. However, in the same deposition, González admitted that there existed guidelines for dealing with these types of problems, namely, referring the officer to the Human Resources division. Docket Document No. 52, Exhibit A. No evidence is presented that López Feliciano received a report of the April 30th incident so that he *could have* made a decision as to whether to disarm and suspend Bosque pending the termination of the administrative investigation. Without notice, it is much more difficult to demonstrate that a supervisor *personally acted* to deny a citizen's constitutional rights.

■ Along with these "failures", plaintiffs also claim that the entire screening, training, investigative, and disciplinary systems in the Police Department were wholly inadequate and impotent and these deficiencies permitted officers to violate citizens' constitutional rights. According to plaintiffs, López Feliciano failed in his duty to establish effective systems within the Police Department so that unfit police candidates such as Bosque would have been screened out and/or discharged early on in the process. Again, looking at the evidence, we disagree.

In a recent opinion of this court, *Román Figueroa v. Torres Molina*, 754 F.Supp. 239 (D.P.R.1990), we discussed initiatives taken by defendant López Feliciano after assuming the Superintendency in March 1986. Included in these initiatives was the restructuring of the upper level administration of the Police Department. He increased the number of Auxiliary Superintendencies from two to six and included an Auxiliary Superintendency for Inspection and Disciplinary Matters ("ASIDM"). General Order 87–14, alleged by plaintiffs to have contributed to hindering disciplinary investigations, in fact, contained the norms and procedures which ASIDM was to use in conducting administrative investigations and defined prohibited police conduct. The former superintendent also created an Auxiliary Superintendency for Education and Training ("ASET") and opened two region-

al police academies to provide continuing education for police officers. This brief review demonstrates that López Feliciano, rather than "acquiescing" or "condoning" police misconduct, had taken active steps to upgrade the level of professionalism in the department and to create more effective internal review procedures to deal with cases of police misconduct. Plaintiffs have not come forward with evidence sufficient to raise an issue of fact as to the causation element necessary to hold a supervisor liable under section 1983. At most, plaintiffs' evidence tends toward establishing López Feliciano's liability under the theory of *respondeat superior*, a position rejected by *Monell*. Because we find no issue of material fact, we grant defendant López Feliciano's motion for summary judgment.

C. Defendants Vélez, González, and Meléndez

■ With respect to defendants Vélez, González, and Meléndez, plaintiffs have come forward with some credible evidence that their acts and omissions meet the causation requirements for supervisory liability under section 1983. Plaintiffs, therefore, have met their initial burden of production under Rule 56. Defendants, in their motion for summary judgment and in their opposition to plaintiffs' motion, have neither refuted plaintiffs' claim nor produced any evidence that would assist the court in ruling favorably on their summary judgment motion. Accordingly, we DENY defendants' summary judgment motion. However, since plaintiffs also have the burden of persuasion at trial, following the mandate of *Celotex*, they must bring forward sufficient credible evidence so as would entitle them to a directed verdict at trial. This the plaintiffs have not done. We, therefore, DENY plaintiffs' motion for summary judgment.

Plaintiffs' evidence establishing defendant Vélez' liability includes excerpts from her deposition and Dr. del Castillo's report. In her deposition, she admitted that Bosque was "borderline" and that, if forced to decide on his fitness for duty as a police officer based solely on his test results, she would not recommend him for the depart-

ment. Dr. del Castillo also opined that defendant Vélez has failed to provide adequate supervision and quality control in her role as administrator of the Human Resources Division. At trial, the finder of fact will evaluate the evidence presented relating to the administration of the division, defendant Vélez' role as director, and the precise procedures used by the Human Resources Division to screen candidates. Further evidence is necessary in order to determine whether her actions or omissions as director can be said to have "caused" plaintiffs' deprivation in that the screening system was totally inadequate or that there existed a pattern of violations so egregious that Vélez' encouragement, condonation or acquiescence can be inferred.

■ Plaintiffs have produced evidence that defendant Meléndez knew and, indeed, counseled Bosque with respect to his off-duty consumption of alcohol. After the April 30th incident, Meléndez wrote a memo to defendant González, his supervisor, describing the events as they were related to him by other police officers. Further, Meléndez admitted that he never recommended that Bosque be sent to the Human Resources Division, even after the April 30th incident. These facts, while raising genuine issues as to the actions and omissions of defendant Meléndez, are not sufficient to establish that he failed to take remedial action with respect to Bosque and that his failure amounted to "reckless or callous indifference." At trial, the finder of fact will have to weigh plaintiffs' evidence as to the responsibilities of a police officer's immediate supervisor and whether Meléndez did, in fact, follow department procedures with respect to his supervision of Bosque.

■ With respect to defendant González, plaintiffs have produced evidence demonstrating that, as of May 2, 1988, defendant knew of the April 30th incident involving Bosque. González admitted that he took no further action because he assumed that the Arecibo unit would conduct the investigation. There is evidence in the record that an administrative investigation was, indeed, conducted. Nor did González

consult further with defendant Meléndez as to the status of the investigation. Defendant also admitted that he did not personally intervene with Bosque, either by way of reprimand or by referral to the Human Resources Division for further evaluation. Again, we do not have before us the police regulations that would clarify supervisory personnel's role with respect to an officer while an administrative proceeding is pending. Without more, there is no way that we can determine whether defendant González followed police procedures or whether his actions constituted ordinary or gross negligence. We simply do not have enough evidence to summarily decide whether defendant González is liable.

To summarize, with respect to the defendants named as parties, we GRANT summary judgment to defendants López Feliciano, Velázquez, Figueroa, and Prats, and DENY the motions of defendants Vélez, Meléndez, and González. We also DENY plaintiffs' motion for summary judgment as to the remaining defendants.

IV. *Proper Party Plaintiffs*

Plaintiffs have alleged three bases for the exercise of this court's jurisdiction. They have alleged federal question jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and (4). Second, by dividing themselves into two groups based on domicile, plaintiffs in "Group II" (domiciled outside of Puerto Rico) have alleged that, as to them, there is complete diversity and therefore 28 U.S.C. § 1332 is an alternative basis for the exercise of federal court jurisdiction. The third jurisdictional basis for the "Group I" plaintiffs (the decedent's common-law wife and son), plaintiffs allege, is the doctrine of pendent jurisdiction, whereby the court should hear the state law tort claims along with the federal cause of action. *See Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). While we take note of plaintiffs' counsel's "creative" pleading, we find that the estate of Angel Ríos Molina is the proper party plaintiff and DISMISS the action as to all plaintiffs, except as to Ly-

dia Martínez, in her capacity as guardian for Angel Omar Ríos and in representing the estate of the decedent.

■ It is clear that complete diversity does not exist as two of the plaintiffs and all of the defendants reside in Puerto Rico. Therefore, section 1332 is not a jurisdictional basis for the present action.

■ As to the section 1983 claim, all of the plaintiffs allege that as a result of Angel Ríos Molina's death, they have lost "the affection, fellowship and emotional support" of their relative and "will continue to suffer great mental anguish and moral pain due to his death." In addition, decedent's child and his mother (plaintiff's "common-law" wife), claim damages for loss of support.

As this court stated in an earlier case, *López Morales v. Otero de Ramos*, 725 F.Supp. 106, 108–09 (D.P.R.1989), "[u]nfortunately, not every important interest is guaranteed constitutional protection." The First Circuit has held that family members do not have a constitutionally-protected interest in the companionship of an adult family member, deprivation of which is actionable under section 1983. *Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir.1986); *López Morales*, 725 F.Supp. at 108. The appellate court, in *Valdivieso*, declined to recognize this familial interest both because of the difficulty "of giving definition and limits to a liberty interest in this vast area" and because such recognition would be "duplicative of the widespread existence of state causes of action." *Valdivieso*, 807 F.2d at 9. Therefore, we must dismiss the 42 U.S.C. § 1983 claim as to all of the plaintiffs, except for decedent's son, who is heir of the estate, and as to Lydia Martínez Correa, in her representative capacity with respect to decedent's estate.

■ Finally, we note that the remaining plaintiffs' state-law claims will not be dismissed as this court, guided by the doctrine of pendent jurisdiction enunciated in *United Mine Workers v. Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138, recognizes that plaintiffs' federal and state claims "derive from a common nucleus of operative fact" and are

"such that [a plaintiff] would ordinarily be expected to try them in one judicial proceeding." Therefore, to promote judicial economy, convenience, and fairness, we will exercise jurisdiction over the remaining plaintiffs' state-law claims.

## V. Conclusion

In sum:

We GRANT the motions for summary judgment of defendants Francisco Figueroa, Miguel Velázquez, José Prats, and Carlos López Feliciano.

We DENY the motions for summary judgment of defendants Isodoro González, Juan Meléndez, and Aida Vélez.

Accordingly, we DENY plaintiffs' motion for summary judgment.

We DISMISS the claims of Brenda Hernández Ríos, Mayra González Ríos, Aida Ríos Candelaria, Olga Ríos Candelaria, Luz Ríos Candelaria, Pedro Ríos Quiñones, Víctor Ríos Molina, and Haydée Molina Santiago. We also DISMISS the claim of Lydia Martínez in her personal capacity. However, she remains a party plaintiff in her representative capacity for her son Angel Omar Ríos Martínez and for the estate of the decedent.

IT IS SO ORDERED.