Amelia Barreto RIVERA,
et al., Plaintiffs.

v.

Police Officer Luis R. MEDINA,
et al., Defendants.

Civil No. 96–1518 (JP).

United States District Court,
D. Puerto Rico.

April 29, 1997.

Juan Carlos Cancio–Reichard, Aguadilla, PR, for plaintiffs.

Mirta E. Rodriguez–Mora, Dept. of Justice, San Juan, PR, for defendants.

### OPINION AND ORDER

PIERAS, Senior District Judge.

Before the Court are codefendant Pedro A. Toledo Dávila's ("Toledo Dávila") motion to dismiss (**docket No. 7**) and plaintiffs' opposition thereto (**docket No. 11**). For the reasons explained below, codefendant Toledo Dávila's motion is hereby **GRANTED** in part and **DENIED** in part.

## I. INTRODUCTION

This case arises out of the death of Aristides Ortega Barreto (hereinafter "decedent"). The following factual description is taken from the complaint. During the early evening of April 28, 1995, decedent went to a nearby store named "Colmado Cafetín Pepń" located in Manatí, Puerto Rico. Officer Luis R. Medina Vargas ("Medina Vargas"), a codefendant in this action, who was on duty and wearing his service uniform, was in his patrol car in front of the store at the time. After decedent completed his purchase and boarded his motor vehicle to return home, officer Medina Vargas, without cause or justification, chased decedent to his residence. Upon arrival at decedent's home, officer Medina Vargas got out of his car yelling and shouting, using foul language and demanding that decedent leave his home and face him. When decedent appeared before officer Medina Vargas, who requested decedent's driver's license by insulting and harassing him in front of many other people, the two began to argue. In response, police officer Medina Vargas repeatedly punched decedent with his nightstick. Decedent ran away and picked up a plastic tube that was lying on the ground to defend himself. Several people that had gathered around the incident took the tube away from decedent and calmed him down. Officer Medina Vargas was never hit with the tube. Moments later, without justification, officer Medina Vargas attacked a bystander, Mr. José A. Barreto Rivera, who fell down after being hit by officer Medina Vargas. Simultaneously, with no motive or justification, officer Medina Vargas pulled out his service firearm and shot decedent in the stomach. Decedent's hands were raised and empty, and he posed a threat to no one. This incident occurred while plaintiff Amelia Barreto Rivera, decedent's mother, was begging officer Medina Vargas not to kill her son. As officer Medina Vargas refused to do so, some relatives took decedent to the Alejandro Otero López Hospital in Manatí; he was pronounced dead at approximately 6:30 p.m. as a result of the gunshot wound.

Plaintiffs filed the instant action pursuant to 42 U.S.C. § 1983, also asserting claims under the Puerto Rico Constitution and under Puerto Rico law. They assert three basis for jurisdiction: jurisdiction founded upon 28 U.S.C. §§ 1331 and 1343 for the § 1983 claims; supplemental jurisdiction under 28 U.S.C. § 1367 to hear the Common-

wealth law claims, as these arise out of the same nucleus of operative facts; and under 28 U.S.C. § 1332 for plaintiffs who are not citizens of Puerto Rico. Coplaintiff Amelia Barreto Rivera is decedent's mother, and a citizen of Puerto Rico; coplaintiff Luz María Soto Quiñones is the mother of decedent's two sons, and a citizen of Pennsylvania; coplaintiffs Aristides Junior Ortega Soto and Albin Rey Ortega Soto are decedent's minor sons, and citizens of Pennsylvania; Aida I. Ortega Barreto, Luz Delia Ortega Barreto, Otilio Ortega Barreto and Providencia Ortega Barreto are decedent's siblings, and are all citizens of Puerto Rico, except Providencia Ortega Barreto, who is a citizen of New York. The amended complaint (docket No. 2) contains six causes of action, summarized as follows:

1. The first cause of action is against officer Medina Vargas for violation of decedent's rights to life and enjoyment of life under the Fourth, Fifth and/or Fourteenth Amendments of the United States Constitution and Sections 8 and 10 of Article II of the Constitution of the Commonwealth of Puerto Rico.

2. The second cause of action is by decedent against Superintendent Toledo Dávila and disciplinary officers A, B, and C for acting in callous disregard of the civil right of citizens by failing to discipline, supervise and control codefendants, and for allowing them to continue performing their duties as police officers in contact with the community in spite of disciplinary records that evidenced a clear pattern of disregard of the civil rights of citizens. Decedent claims that codefendants' failure to properly supervise proximately caused his death and caused him to suffer extensive emotional distress and mental anguish while being beaten and fatally shot by codefendant Medina Vargas.

3. In the third cause of action, coplaintiffs Aristides Junior Ortega Soto and Albin Rey Ortega Soto claim they are entitled to inherit decedent's causes of action for damages proximately caused by codefendants' constitutional violations and/or negligent or intentional acts or omissions.

4. In the fourth cause of action, all coplaintiffs except Luz María Soto Quiñones assert that codefendants' conduct constitutes a violation of Sections 8 and 10 of Article II of the Constitution of the Commonwealth of Puerto Rico and/or gives rise to a cause of action under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 (1990), thereby entitling them to damages for their emotional suffering.

5. In the fifth cause of action, minors Aristides Junior Ortega Soto and Albin Rey Ortega Soto claim they are decedent's heirs, and depended on him economically at the time of his death, thereby entitling them to the sum of $200,000, for which the codefendants are jointly and severally liable.

6. In the sixth cause of action, coplaintiff Amelia Barreto Rivera asserts that codefendants' actions and/or omissions constitute callous and reckless disregard and/or deliberate indifference to decedent's constitutional rights, thereby entitling her to punitive damages in the amount of $2,000,000.

The named defendants are officer Medina Vargas and Superintendent of Police Toledo Dávila. Plaintiffs sue them in both their personal and official capacities. Codefendant Medina Vargas did not answer the complaint and default was entered against him on January 14, 1997 (docket No. 12). Codefendant Toledo Dávila has moved to dismiss the claims against him on four grounds: 1) failure to state a cognizable claim under 42 U.S.C. § 1983; 2) Eleventh Amendment immunity; 3) lack of standing to sue; and 4) qualified immunity. Codefendant Toledo Dávila argues that plaintiffs have failed to state a claim against him because they have not alleged a specific factual basis supporting his liability. He urges the Court to dismiss the claims against him in his official capacity on Eleventh Amendment immunity grounds. Codefendant Toledo Dávila also asserts that constitutional violations predicated on fourth amendment violations of excessive force are not inheritable and that plaintiffs have no standing to sue on their own behalf unless the alleged constitutional violation is one directly aimed at the filial/parental relationship, which Toledo Dávila asserts is not the case here. Finally, codefendant Pedro Toledo claims he is entitled to qualified immunity.

Citing the case of *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553 (1st Cir.1989), in which superintendent Cartagena was found liable under 42 *U.S.C.* § 1983, plaintiffs assert that they have stated a valid claim against codefendant Toledo Dávila for failing to implement an adequate disciplinary system. Plaintiffs recognize that "to pursue a 1983 claim the action or deprivation committed by the state must be one which is directly aimed at the relationship between parent and child." Plaintiffs' Opposition to Defendant's Motion to Dismiss, docket No. 11 at 4. Plaintiffs claim this is their contention, and it is "stated all over the complaint." *Id.* Finally, plaintiffs contend that codefendant Toledo Dávila is not entitled to qualified immunity because the right to be free from bodily harm is well established and he knew or should have known that the screening process used to select police officers was inadequate and was likely to lead to the deprivation of constitutional rights.

## II. DISCUSSION

### A. Failure to State a Cognizable Claim under 42 U.S.C. § 1983

■ Codefendant Toledo Dávila claims that plaintiffs have failed to state a claim against him because the complaint only contains unsupported inference and conclusory statements, unsupported by specific facts. Codefendant Toledo Dávila asserts that the complaint does not even contain minimal facts as to who did what to whom and why. He claims that even taking all the averments of the complaint as true, it is clear that Toledo D21avila was not personally involved in the underlying incident. Furthermore, claims Toledo Dávila, the complaint does not allege the existence of a policy promulgated by him that would in itself threaten civil rights. Therefore, he concludes that the claims against him should be dismissed.

Plaintiffs rely on *Gutiérrez–Rodríguez* for the proposition that, under certain circumstances, the Superintendent of Police may be liable under 42 U.S.C. § 1983 for failure to adequately supervise police officers. Plaintiffs claim that the allegations against Cartagena in *Gutiérrez–Rodríguez* were proved through evidence uncovered in discovery.

Plaintiffs point out that the relevant personnel files are under codefendant Toledo Dávila's control and they claim that they cannot describe in greater detail the deficiencies in supervision and discipline without recourse to those files.

We find the allegations of the complaint adequate to state a claim against Toledo Dávila at this stage in the proceedings. In particular, paragraphs 23–35 state:

23. In a reckless and/or callous disregard for the rights of individuals, codefendants Toledo, Disciplinary Officers A, B, and C failed to implement the *existing disciplinary system* intended to detect unconstitutional behavior such as that evidenced by defendants and allowed them to continue performing their duties as police officers in contact with the community. Had they implemented the existing disciplinary system, defendants' violation of decedent's constitutional rights would have been avoided because, at least, defendants' previous conduct as police officers would have warranted their dismissal from the force and/or their reassignment to positions in which they would not come into contact with citizens, whose rights they were under a duty to protect.

24. As a proximate result of codefendants Toledo, Disciplinary Officer A, B, and C's actions and/or omissions, which constitute a callous or reckless disregard for decedent's rights, he was fatally wounded.

25. Codefendants Toledo,'Disciplinary Officers A, B, and C failed in their duty to *control* and *discipline* defendants in a reckless and/or callous disregard for the civil rights of citizens, since they had *actual* or *constructive knowledge* of their subordinates' unlawful pattern of behavior and did nothing to remedy these deficiencies.

Plaintiffs are not required to describe the specific deficiencies in Toledo Dávila's supervision and control in the complaint. Clearly, plaintiffs will only gain access to the evidence they need to prove their case during discovery. Codefendant Toledo Dávila may renew this objection by moving for summary judgment after the parties have engaged in discovery.

## B. Eleventh Amendment Immunity

■ Plaintiffs have sued Toledo Dávila in his official capacity. Toledo Dávila has moved to dismiss this claim on the ground that it is barred by the immunity afforded by the Eleventh Amendment. The Eleventh Amendment bars certain suits claiming money damages brought in federal court against any state, including the Commonwealth of Puerto Rico, without its consent. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 888 F.2d 940, 942 (1st Cir.1989) ("The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes"). Eleventh Amendment immunity is not limited to cases where the state is named as a party of record. *Vázquez Mercado v. Betancourt y Lebrón*, 1993 WL 54419 (D.P.R. 1993). Diverse governmental entities and governmental officers enjoy its protections. *Id.* at *4. When an action is brought against an entity or individual, the court must consider whether the defendant is an arm of the Commonwealth partaking of the Commonwealth's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not apply. *Id.* The Eleventh Amendment not only applies to suits brought against entities which are determined to be arms of the Commonwealth, but also bars suits against officials of those entities when acting in their official capacities. *Id.* This Court has previously ruled that the Puerto Rico Police Department enjoys Eleventh Amendment immunity and that suits against the Superintendent of Police in his official capacity must be dismissed on Eleventh Amendment immunity grounds. *Id.* at *5.

## C. Standing

■ Codefendant Toledo Dávila contends that plaintiffs may not sue under 42 U.S.C. § 1983 for damages they suffered as a result of the shooting of their relative. Codefendant frames this as an issue of standing but it may also be viewed as a failure to state a claim. 42 U.S.C. § 1983 provides that any person who, acting under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or laws of the United States, shall be liable to the party injured. Therefore, to state a claim under § 1983, plaintiffs must identify a right, privilege, or immunity secured by the Constitution or laws of the United States, of which codefendant Toledo Dávila has deprived them. Plaintiffs have not done so. They have identified only one right in their complaint: decedent's right to due process of law, to enjoy life and to be free from unreasonable seizures as guaranteed by the Fourth, Fifth and/or Fourteenth Amendments of the United States Constitution. Therefore, the facts alleged in the complaint are only sufficient for decedent to state a claim under § 1983.

Furthermore, plaintiffs could not state a claim under § 1983 even if they amended the complaint because they can state no liberty interest violation or due process claim based on decedent's death. In *Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir.1986), the First Circuit ruled that family members do not have a constitutionally protected liberty interest in the companionship of an adult son so as to give rise to a claim under § 1983. *Valdivieso Ortiz* arose out of the death of Jose Valdivieso Ortiz, who was beaten to death by guards at the Guayama Regional Detention Center in Puerto Rico. The original plaintiffs in the suit were decedent's mother, suing both on her behalf and as a representative of her son's estate, his stepfather and his four siblings. Plaintiffs alleged that they had been deprived of their relative's companionship, which they claimed was protected under the Fourteenth Amendment as an element of personal liberty. Defendants moved to dismiss all the claims except those filed on behalf of decedent, on the ground that relatives have no personal claim under § 1983 for the wrongful death of a family member. The district court granted the motion as to all the plaintiffs except the mother, who was allowed to prosecute both her personal claim and that of her son. The stepfather and siblings appealed.

The Court of Appeals for the First Circuit found that the Supreme Court's precedents with respect to a familial liberty interest fell into two categories. *Id.* at 8. The first related to the substantive due process right to

choose for oneself in certain family matters such as procreation and rearing of children. The second category of cases held that when the state seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, it must' adhere to rigorous procedural safeguards. *Id.* Reviewing these precedents, the Court of Appeals stated:

> We decline, on this record, to make the leap ourselves from the realm of governmental action directly aimed at the relationship between a parent and a young child to an incidental deprivation of the relationship between appellants and their adult relative.

*Id.* at 9 (citations omitted). Accordingly, the Court affirmed dismissal of the stepfather's and siblings' claim.[1] The holding in *Valdivieso Ortiz* has been applied consistently in this Circuit. *See, e.g, Manarite v. City of Springfield,* 957 F.2d 953 (1st Cir.1992) (daughter has no liberty interest protected by due process clause in familial relationship with her father, who committed suicide while under city's protective custody), *cert. denied,* 506 U.S. 837, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992); *Martínez Correa v. López Feliciano,* 759 F.Supp. 947 (D.P.R.1991) (common-law wife, minor child, mother, brothers, aunts and cousins do not have § 1983 claim against officer for shooting and killing their family member); *Jones v. State of Rhode Island,* 724 F.Supp. 25 (D.R.I.1989) (parents of deceased inmate at mental institution have no individual § 1983 claims based on right to continued family association).

The First Circuit recently affirmed that relatives may not sue under § 1983 for the loss of a family member in *Soto v. Flores,* 103 F.3d 1056 (1997). Soto was an abused wife who had two children by her husband, Rodríguez. After nine years of abuse, she finally reported her husband to the police after a beating on April 17, 1991. Soto sought the protections of Puerto Rico's Law 54, one of the nation's most comprehensive domestic violence laws. P.R. Laws Ann. tit. 8, § 631–635 (Supp.1995). She told the police that her husband had threatened to kill her if she put him in jail. Instead of affording her Law 54's protections, police officer Carlos Flores informed Rodríguez that Soto had reported him. In the next few days there were several tense encounters between Soto and Rodríguez, in which Rodríguez was very upset. On April 21, 1991, Soto went to pick up the children after an outing with their father. Upon her arrival, Rodríguez shot his son in the forehead and his daughter through her mouth. He then killed himself. Both children were pronounced dead upon arrival at the hospital.

Soto brought suit under § 1983 against officer Flores and Betancourt–Lebrón, Puerto Rico's superintendent of police, both on her own behalf and as representative of her children. The district court held that Soto, in her individual capacity, could not bring a due process claim based on injury. to her children, and granted summary judgment in favor of defendants. The Court of Appeals for the First Circuit affirmed, stating:

> There is no absolute constitutional right to enjoy the companionship of one's family members free from all encroachments by the state. "State action that affects the parental relationship only incidentally ... though the deprivation may be permanent ... is not sufficient to establish a violation of a [sic] identified liberty interest." Thus, the death of a family member will not ordinarily give those still alive a cognizable due process claim under section 1983. Here, the defendants' actions, despite the tragic outcome, were not specifically aimed at ending or affecting Soto's relationship with her children. Nor can Soto successfully distinguish her case from the cited precedents of this court by pointing to her own mental anguish. The question is not one of a degree of suffering, but whether the plaintiff can establish a violation of a federal right. While Soto's loss was of enormous, heartbreaking magnitude, the Constitution does not protect against all harms. She herself was not deprived of a constitutionally protected interest, and she

---

1. Defendants did not appeal the mother's personal claim on the theory that she was entitled to

damages under Commonwealth law.

may not bring a section 1983 due process claim on her own behalf.

*Id.* at 1062 (citation omitted). The First Circuit did not reach the issue of whether Soto, in her capacity as a representative of her dead children, had presented a due process claim that would survive summary judgment, finding that defendants were protected by qualified immunity on that claim. *Id.* at 1058. From these precedents it is clear that none of the plaintiffs may assert a cause of action under § 1983 in their individual capacities. Decedent is the only proper plaintiff with respect to the § 1983 action.

▪ Codefendant Toledo Dávila also claims in his motion to dismiss that § 1983 actions predicated on fourth amendment violations of excessive force are not inheritable, although he cites no cases to support this proposition. *But see Robles–Vázquez v. Tirado García,* 110 F.3d 204 (1st Cir.1997) (case prosecuted by decedent's heirs for use of excessive force in violation of the Fourth and Fourteenth Amendments) Section 1983 does not address the issue of the survivorship of an action upon death of the plaintiff. The United States Supreme Court has held that under 42 U.S.C. § 1988,[2] state law determines the survivorship of a § 1983 action. *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

▪ Puerto Rico does not have a survivorship statute dealing with tort cases in general. *Ferrer Encarnación v. Betancourt y Lebrón,* 855 F.Supp. 528 (D.P.R.1994). However, the Supreme Court of Puerto Rico has ruled that survivorship is generally encompassed within Article 1802 of the Civil Code, Puerto Rico's general tort provision.[3] *Vda. de Delgado v. Boston Ins. Co.,* 101 P.R. Dec. 598, 603 (1973). Only highly personal rights that require the natural existence of the person to continue the action do not survive. *Id.* Such highly personal rights include usufruct, *patria potestas,* support, tutorship, and certain labor and service contracts. Moreover, plaintiffs also allege codefendants' actions violated the Fourteenth Amendment to the United States Constitution. Case law indicates that § 1983 actions based on deprivation of life without due process of law under the Fourteenth Amendment are inheritable under Puerto Rico law. *See, e.g., Martínez Correa,* 759 F.Supp. 947; *López Navarro v. Otero de Ramos,* 797 F.Supp. 87 (D.P.R. 1992). Therefore, decedent's estate, which comprises decedent's two minor sons, coplaintiffs Aristides Junior Ortega Soto and Albin Rey Ortega Soto, represented by coplaintiff Luz Maria Soto Quiñones in her capacity as guardian, is the proper party plaintiff to the § 1983 action.

## D. Qualified Immunity

As a final basis for his motion to dismiss, codefendant Toledo Dávila argues that he is entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil damages insofar as their conduct does not violate clearly established statutory or constitution rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It has been clearly established since 1985 that deadly force may not be used to prevent the escape of an apparently unarmed suspected felon unless necessary to prevent the escape and the police officer has probably cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *See Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

Plaintiffs' claims against Toledo Dávila are based on supervisory liability. "Supervisory liability may not be predicated upon a theory of *respondeat superior.*" *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (citing *Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d

---

2. Section 1988 provides that when federal law is deficient with respect to application of § 1983, a federal court should apply the state law of the forum so long as it is not inconsistent with the Constitution and laws of the United States.

3. Article 1802 states: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudent of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." P.R. Laws Ann. tit. 31, § 5141 (1990).

at 562). The supervisor must be sued in his individual capacity "for his own acts or omissions." *Id.* (citing *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989)). Moreover, supervisory liability under § 1983 cannot be premised on mere negligence. *Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87, 92 (1st Cir.1994). "Absent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference." *Hegarty v. Somerset County,* 53 F.3d 1367, 1379 (1st Cir.1995) (internal quotations and ellipses omitted) (citing *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 902 (1st Cir. 1988)), *cert. denied,* —— U.S. ——, 116 S.Ct. 675, 133 L.Ed.2d 524 (1995). The First Circuit has more recently added that "indifference that rises to the level of being deliberate, reckless or callous, suffices to establish liability under § 1983." *Sánchez,* 101 F.3d at 227. Deliberate, reckless, or callous "indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.", *Hegarty,* 53 F.3d at 1380 (emphasis added); *Febus,* 14 F.3d at 92. "The 'affirmative link' requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Hegarty,* 53 F.3d at 1380.

If codefendant Toledo Dávila's knew or should have known that the failure to discipline, supervise and control Officer Medina Vargas was very likely to lead to his.alleged excessive use of force, Toledo Dávila may be liable under § 1983. Although plaintiffs have not yet produced evidence that the need for more effective supervision was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that Toledo

Dávila can reasonably be said to have been deliberately indifferent to the need, *see Comfort v. Town of Pittsfield,* 924 F.Supp. 1219 (D.Me.1996), their allegations in this respect are sufficient to withstand a motion to dismiss. Codefendant Toleda Dávila may move for summary judgment on the issue of qualified immunity after discovery.

## III. CONCLUSION

Based on the foregoing, the claims against defendant Toledo Dávila in his official capacity are hereby **DISMISSED.** Furthermore, the Court finds that the estate of Aristides Ortega Barreto, comprising his heirs Aristides Jr. Ortega Soto and Albin Rey Ortega Soto, represented by their mother Luz María Soto Quiñones as guardian, is the proper party plaintiff to the § 1983 action against defendant Toledo Dávila in his personal capacity. The claims under § 1983 of Amelia Barreto Rivera, Aida Ortega Barreto, Otilio Ortega Barreto and Luz Delia Ortego Barreto are hereby **DISMISSED.** Likewise, the Sixth Cause of Action is hereby **DISMISSED** since plaintiff Amelia Barreto Rivera has no § 1983 claim and punitive damages are not available under Commonwealth law. Pursuant to 28 U.S.C. § 1367,[4] the Court will exercise supplemental jurisdiction over plaintiffs' claims under Commonwealth law.

IT IS SO ORDERED.

---

4. 28 U.S.C. § 1367(a) states in pertinent part:
   [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all the claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.