Luz Maria SERRANO,
et al., Plaintiffs,

v.

Jose FIGUEROA–SANCHA,
et al., Defendants.

Civil No. 11–1427(DRD).

United States District Court,
D. Puerto Rico.

July 16, 2012.

Daliah Lugo–Auffant, Lugo Auffant Law Offices, Winter Park, FL, for Plaintiffs.

Idza Diaz–Rivera, P.R. Department of Justice, Federal Litigation, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. INTRODUCTION

Plaintiffs Luz María Serrano, Hiram Martinez and Hiraniel Martinez Serrano ("Plaintiffs") filed suit under 42 U.S.C. § 1983 against Jose Figueroa–Sancha, Officer Padilla, Officer Valls and Officer Roman in their individual capacities, and Emilio Diaz–Colon in his official capacity (collectively the "Defendants"). Defendants are all members of the Puerto Rico Police Department ("PRPD").

Plaintiffs allege that they were illegally detained by Defendants, thereby violating their constitutional rights to be free of unreasonable searches and seizures and unreasonable use of excessive force.

Plaintiffs bring additional claims arising under the laws of Puerto Rico which are attached to the instant case via the exercise of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Plaintiff Luz Maria Serrano and Hiram Martinez are married and have seven (7) children; one of their children is co-plaintiff Hiraniel Martinez, who is of legal age.

At the time Plaintiffs commenced the instant action, Defendant Figueroa–Sancha was the Superintendent of the PRPD. Also, Defendants Officer Padilla and Officer Valls were sergeants in the PRPD at all relevant times, and Officer Roman is a police officer with the PRPD. Defendant Emilio Diaz–Colon is the current Superintendent of the PRPD.[1]

### II. FACTUAL HISTORY [2]

Plaintiffs allege that on December 14, 2009 in Camino Los Andinos, the Cupey Alto district of San Juan, police officers intervened with Plaintiffs after pursuing and arresting a fugitive in front of Plaintiffs' domicile. While arresting the fugitive, Officers Valls, Padilla and Roman allegedly pointed their firearms at Hiram Martinez and forced him to walk back into the house. The officers also purportedly threatened to shoot him and arrest his family if he did not hand over his weapons. (Docket No. 7, paragraph 3.7.). Plaintiffs aver that Officers Valls, Padilla and Roman forcefully broke the doors to their house, knocked over furniture, and deliberately ignored Plaintiff Martinez's inquiries regarding their authorization to search his property and why he was being detained. At no time was Martinez armed.

---

1. The Court is aware that Diaz Colon resigned as the Superintendent of the PRPD on March 28, 2012 and was succeeded by Hector Pesquera the following day.

2. The factual history is drawn exclusively from Plaintiffs' *Amended Complaint* (Docket No. 7).

The police officers proceeded to arrest Martinez. Martinez's wife, Plaintiff Luz Serrano, accompanied by her daughter, then drove to the Cupey Alto Police station. At the police station, they were assisted by two officers who stated to have knowledge of the matter and indicated that the situation would be resolved. When Serrano returned to her home, Officers Roman, Padilla and Valls were still in her house conducting a search, alongside other unknown officers, also co-defendants (the, "Unknown Defendants"). None of these officers were wearing their badges. Plaintiff Hiraniel asked an officer to identify himself but he refused and threatened to arrest Hiraniel's mother, Plaintiff Serrano. The officers proceeded to remove Serrano from her vehicle, searched her and handcuffed her. Officer Valls witnessed her arrest and told Serrano "[t]hat's what you get for what your son did." (Docket No. 7, paragraph 3.7). Officer Valls also threatened to contact social services in order to take away her children if she complained. Serrano was taken back to the Cupey Alto Police Station where she remained handcuffed for approximately three hours.

Plaintiff Martinez was also brought to the police station and remained in a cell where he could see his wife detained and being threatened. Martinez asked officers the reason for their arrest, and these officers indicated that they had found illegal fireworks at his home. Plaintiff Martinez later saw the police officers distributing the fireworks among themselves. Plaintiff Serrano was released between 3:45 am and 4:00 am, but she was given instructions to return to the police station at 9:00 am. Both Plaintiffs were not given any food or water during their confinement.

While waiting for her detained husband, Officer Roman proceeded to arrest and detain Serrano once again. Serrano became very anxious and suffered a nervous crisis, following her second arrest. Serrano's daughter requested assistance of paramedics. When the paramedics arrived, Serrano was hyperventilating and suffering from hypoglycemia. After being stabilized, Officer Padilla released her from custody. She was instructed to go home and would be later contacted to sign paperwork in order to release the police from responsibility. Plaintiff Martinez, still in custody, was transferred to a police station in Rio Piedras, where he was not released until later that evening. Neither Martinez nor Serrano were ever taken before a magistrate judge or charged with the commission of a crime while they were detained or afterwards.

On December 16, 2009, Serrano filed an administrative complaint at PRPD's headquarters. That same day, Defendants Padilla, Roman and Valls contacted Martinez and Serrano, interrogated them as to whether or not they intended to pursue the complaint further. Later that day, two unknown police officers knocked Plaintiff Hiraniel off his motorcycle, beat him and fled. Hiraniel was not armed and did not represent a threat to the officers or anyone else at the time.

## III. PROCEDURAL HISTORY

Plaintiffs filed a similar cause of action on October 28, 2010 (10–cv–2050 (CCC), the "First Action"); the Court dismissed this First Action without prejudice on February 28, 2011 for lack of service of process. (10–cv–2050, Docket No. 4). The instant action was filed on May 9, 2011 and amended on September 6, 2011 to include Emilio Diaz Colon, in his official capacity as a Defendant (hereinafter, "Second Action").

On November 7, 2011, the Court ordered Plaintiffs to show good cause for their untimely service. (Docket No. 12). Plaintiffs responded to the *Order to Show*

*Cause* on November 13, 2011 (Docket No. 13) arguing that Defendants evasion of service constituted "good cause" for lack of service. In its discretion, the Court found good cause and awarded Plaintiffs sixty (60) days to effectuate proper service on the remaining unserved Defendants. (Docket No. 17).

On January 10, 2012, Defendants filed a *Motion to Dismiss* (Docket No. 20). Therein, Defendants aver that co-defendant Figueroa–Sancha has not been served adequately given that the summons was delivered to his office when he had already resigned as the superintendent of the PRPD and was not physically present in the building at the time of service.

Defendants also moved for dismissal on the basis of Plaintiffs' failure to properly serve the remaining Defendants within 120 days of commencing the instant suit as required by Rule 4 of the Federal Rules of Civil Procedure. Defendants furthermore argue the dismissal of all Unknown Defendants and co-defendant Diaz Colon in his official capacity is warranted because Plaintiffs' claims against these Defendants are time barred. Defendants assert that the failure to identify the Unknown Defendants in the First Action did not toll the statute of limitations as to these Defendants and Diaz Colon with the dismissal of the First Action. Finally, Defendants assert that Diaz Colon is entitled to Eleventh Amendment immunity in his official capacity, and therefore, Plaintiffs' claims against him, in his official capacity, should be dismissed.

After multiple attempts, Plaintiffs have successfully executed process on co-defendant Diaz Colon, Officer Padilla and Officer Roman. Diaz Colon was served with process on December 15, 2011 (Docket No. 28). Officer Padilla was served with process on January 12, 2012 (Docket No. 29) and Officer Roman was served with process on February 16, 2012 by delivering the summons and complaint to his contact agent. (Docket No. 47).

Service of process as to Defendant Roman was achieved after multiple unsuccessful visits to the Caimito precinct and PRPD headquarters. During the attempts, Plaintiffs were informed that Defendant Roman had been transferred from the Caimito precinct, but information on Roman's current location was not provided. After various attempts to complete service, all to no avail, Plaintiffs moved the Court for leave to serve Defendant Roman by publication (Docket No. 33). The Court denied Plaintiffs' request, but instead issued an order demanding the representative of the PRPD Legal Department to coordinate with Plaintiffs' counsel to receive service of process on behalf of Roman (Docket No. 37). Despite the Court's order, the representative PRPD Legal Department refused to accept service of process on behalf of Roman, and instead directed the process server to the San Juan Drug Division where Roman was supposedly located at the moment. At the precinct, an officer that claimed to be Roman's contact agent accepted process on his behalf. (Docket No. 38).

On January 30, 2012, Plaintiffs opposed Defendant's *Motion to Dismiss* (Docket No. 30). Therein, Plaintiffs clarified their intention to prosecute their claims and that any delay in the proceedings is solely due to their precarious financial situation and the complicity of members of the PRPD in helping Defendants avoid service process. Plaintiffs also do not challenge Diaz Colon's entitlement to Eleventh Amendment immunity for monetary damages; however, Plaintiffs argue that the PRPD is liable for monetary damages under state tort law.

On February 26, 2012, Plaintiffs supplemented their opposition (Docket No. 43),

challenging Defendant Figueroa–Sancha's allegations on the absence of service due to Figueroa–Sancha's awareness of the suit and affirmative actions.

## IV. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 556 U.S. 662, 129 S.Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal,* 556 U.S. at 684, 129 S.Ct. 1937 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Iqbal,* 556 U.S. at 684, 129 S.Ct. 1937. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal,* 556 U.S. at 695, 129 S.Ct. 1937)(quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal,* 556 U.S. at 684, 129 S.Ct. 1937. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 684, 129 S.Ct. 1937 (quoting Fed.R.Civ.P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 1950–51 (citing *Twombly,* 550 U.S. at 567, 127 S.Ct. 1955). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio–Hernandez v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011), (citing *Iqbal,* 556 U.S. at 685, 129 S.Ct. 1937).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incred-

ible." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *Ocasio–Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 556 U.S. at 685, 129 S.Ct. 1937); *see Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see Ocasio–Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda–Villarini*, 628 F.3d at 29.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well, *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596; *see Mendez Internet Mgmt. Servs. v. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir.2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[ ] out rhetoric masquerading as litigation.").

## V. ELEVENTH AMENDMENT IMMUNITY

### i) Official Capacity

█ As a threshold matter, the Court must examine the doctrine of qualified immunity before turning to Defendants' other contentions. "Because [sovereign immunity] is an *immunity from suit* rather than a mere defense to liability, [the Supreme Court of the United States] repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal citations omitted) (emphasis in the original); *see Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

█ States cannot be sued for monetary damages in federal court unless the state being sued waives its Eleventh Amendment immunity or consents to being sued. *See* CONST. amend. XI; *O'Neill v. Baker*, 210 F.3d 41 (1st Cir.2000); *Ciampa v. Mass. Rehabilitation Com'n*, 718 F.2d 1 (1st Cir.1983); *Ezratty v. Puerto Rico*, 648 F.2d 770 (1st Cir.1981). "Absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Furthermore, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir.1991); *Wang v. N.H. Bd. of Registration in Medicine*, 55 F.3d 698, 700 (1st Cir.1995); *Vizcarrondo v. Bd. of Trustees of Univ. of P.R.*, 139 F.Supp.2d 198 (D.P.R.2001). However, the Eleventh Amendment does not bar prospective injunctive or equitable relief against state officials. *Nieves–Marquez v. Puerto Rico*, 353 F.3d 108, 123–124 (1st Cir.2003) (citing *Ex Parte Young*, 209 U.S. 123, 155–156, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)

(The Eleventh Amendment protects state officials in their official capacity, since a claim against a state official for monetary relief is, in essence, a claim against the State).

In the instant matter, Defendant Diaz–Colon is being sued in his official capacity as superintendent and head of the PRPD. The events that lead to the alleged violation of Plaintiffs' constitutional rights fall within the scope of Diaz Colon's supervisory responsibility.

 Puerto Rico has long been considered a state for Eleventh Amendment purposes. *Irizarry–Mora v. Univ. of Puerto Rico,* 647 F.3d 9 (1st Cir.2011); *see Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.,* 991 F.2d 935, 939 (1st Cir. 1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir.1987)(citing *Ramirez v. P.R. Fire Service,* 715 F.2d 694, 697 (1st Cir.1983) and *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985))(emphasis in the original); *Maysonet–Robles v. Cabrero,* 323 F.3d 43 (1st Cir.2003); *Gerald v. Univ. of P.R.,* No. 08–2084, 2010 WL 1133856, at *3 (D.P.R. Mar. 22, 2010). Diaz–Colon is being sued in his official capacity as state official for monetary relief which falls explicitly within the Eleventh Amendment protection.

The First Circuit and this Court have repeatedly held that the PRPD is considered an arm of the state for sovereign immunity purposes. *Reyes v. Supervisor of Drug Enforcement Administration,* 834 F.2d 1093, 1098 (1st Cir.1987). "We agree that the claims in federal court for dam-ages against [defendant] in his official capacity and the Police Department are precluded by the eleventh amendment, since they must, if successful, be satisfied from the coffers of the Commonwealth of Puerto Rico. For these purposes, we have treated the Commonwealth and its agencies as a state" *Reyes,* 834 F.2d at 1098 (citing *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 776 (1st Cir.1981))(emphasis in the original).

While the First Circuit established a new test for evaluating Eleventh Amendment immunity, the result for the PRPD is consistent with the First Circuit's vast prior precedent also affording Eleventh amendment protection. *Id.* "[I]t is settled law that the Puerto Rico Police Department is an alter ego of the state and cannot be sued in federal court." *Cestero v. Rosa,* 996 F.Supp. 133, 142–43 (D.P.R. 1998) (citing *Rivera v. Medina,* 963 F.Supp. 78, 82 (D.P.R.1997)), *Sanchez Ramos v. Puerto Rico Police Dept.,* 392 F.Supp.2d 167, 177 (D.P.R.2005), *Vega Castro v. Puerto Rico,* 43 F.Supp.2d 186, 189 (D.P.R.1999). "[T]he protection afforded by the [Eleventh] Amendment extends not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity." *Montalvo–Padilla v. Univ. of P.R.,* 492 F.Supp.2d 36, 43 (D.P.R.2007). Therefore, PRPD officials are immune from suit in their official capacity under the Eleventh amendment immunity afforded to the PRPD as an "arm" of the state, except as to claims in equitable relief, which constitute the only exception as to § 1983 claims in which a state official can be sued in his official capacity. "[T]he Supreme Court has recognized that in certain circumstances a federal court can impose prospective injunctive relief against state officials to prevent them from future violations of federal law." *Vega Castro v.*

*Puerto Rico,* 43 F.Supp.2d 186, 190 (D.P.R.1999) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441).

"It has remained abundantly clear, however, that the Eleventh Amendment protects a state official, acting in his official capacity, from any claim for retrospective monetary relief, just as if it were a suit against the state itself." *Mills v. Maine,* 118 F.3d 37, 54 (1st Cir.1997). *"Ex parte Young* allows a way around the bar to federal jurisdiction erected by the Supreme Courts' Eleventh Amendment jurisprudence only in cases where prospective declaratory or injunctive relief is sought under federal law." *Id.* "The *Ex parte Young* doctrine does not apply in cases where plaintiffs seek monetary relief for past violations of federal law, regardless of whether the party the plaintiffs seek to designate as a defendant is nominally a state officer sued in his official capacity." *Vega Castro,* 43 F.Supp.2d at 191.

In the instant case, Plaintiffs are seeking monetary relief for the damages allegedly caused by Defendants. Diaz Colon, in his official capacity, or any state official in his official capacity, is barred by the Eleventh Amendment immunity as to claims for monetary damages. However, the Eleventh Amendment bar would not apply if the claims were for equitable relief; yet as Plaintiffs are only seeking monetary relief and not prospective injunctive relief, the Ex Parte Young exception is not applicable to the case at bar.

As a representative of the PRPD acting in his official capacity, Diaz Colon is shielded from liability by the Eleventh Amendment. Hence, there can be no monetary liability against Diaz Colon, in his official capacity. Accordingly, the Court hereby **GRANTS** Defendants' Motion to Dismiss Diaz Colon, in his official capacity, with prejudice.

### ii) Supplemental State Claims

■ Plaintiffs' argument regarding PRPD's liability under state tort grounds is irrelevant because PRPD is not party in present suit. Furthermore, "as a result of the immunity provided by the Eleventh Amendment, the Court does not have supplemental jurisdiction over the pendant state law claims brought against defendants." *Aguilar–Moya v. Puerto Rico,* No. 06–CV–1513, 2006 WL 3000765 at *2 (D.P.R. Oct. 19, 2006) (citing *Raygor v. Regents of the Univ. of Minnesota,* 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002)). Having found that Defendant Diaz Colon is entitled to Eleventh Amendment immunity, there can be no supplemental state claims against him. Eleventh Amendment immunity precludes claims against Defendant seeking monetary relief regardless if they arise from state or federal provisions in Federal Court. Simply, Eleventh Amendment immunity prohibits the Court from entertaining Plaintiffs' state law claims, unless Plaintiffs requested equitable relief.

### VI. TOLLING

■ Plaintiffs have alleged that the instant complaint survives the defense of prescription because the statute of limitations was tolled. One method for tolling provided by Article 1873 of Puerto Rico's Civil Code is "by their institution before the courts." P.R. Laws Ann. tit. 31, § 5303. "Under Puerto Rico tolling rules, which are based on the Spanish civil law, the institution of an action in court is commonly held not only to interrupt the running of the applicable statute of limitations but, at least in the event of a voluntary or usual non-prejudicial dismissal of the original action, to cause the entire limitations period to run anew from the date the previous action came to a definite end." *Lopez–Gonzalez v. Mun. of Comer-*

*io,* 404 F.3d 548 (1st Cir.2005) (internal citations omitted). "The usual rule under Puerto Rico law is that the filing of a judicial action tolls the statute of limitations and, if the action is dismissed without prejudice, the limitations period is reset and starts to run again from that date." *Rodriguez v. Suzuki Motor Corp.,* 570 F.3d 402, 408 (1st Cir.2009) (citing *Silva Wiscovich v. Weber Dental Mfg. Co.,* 19 P.R. Offic. Trans. 592, 603–604, 119 D.P.R. 550 (1987)); *see Rodriguez–Garcia v. Mun. of Caguas,* 354 F.3d 91, 96 (1st Cir. 2004); *Diaz de Diana v. A.J.A.S. Ins. Co.,* 110 D.P.R. 471, 10 P.R. Offic. Trans. 602, 606 (1980).

▆ Plaintiffs' First action was dismissed without prejudice on February 28, 2011. Plaintiffs' Second Action was filed on May 9, 2011, within the one year statute period of the dismissal of the First Action. With the dismissal of the First Action, a new one year limitations period commenced; therefore, the filing of the Second Action within that period was not barred by the statute of limitations.

▆ In order for judicial tolling to adequately commence a new limitations period the requirements for judicial tolling have to be met. For the judicial tolling to be effective, Plaintiffs must satisfy the identicality requirement. In order to satisfy this requirement, "the claims asserted in the subsequent action (1) 'must seek the same form of relief' as the first action; (2) 'must be based on the same substantive claims;' and (3) 'provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds, … must be asserted against the same defendants in the same capacities; new defendants should not be added.'" *Rodriguez,* 570 F.3d at 409 (quoting *Rodriguez–Garcia,* 354 F.3d at 98). The identicality requirement serves to "prevent plaintiffs from circumventing the notice function of the statute of limitations by asserting different claims in belated federal court complaints." *Rodriguez–Garcia,* 354 F.3d at 98.

As stated above, for Plaintiffs to toll the statute of limitations, "the later suit must … contain the same substantive claims and seek the same relief" as the First Action. *Rodriguez,* 570 F.3d at 413; *see Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 43 (1st Cir.1990) ("tolling the statute as to one jointly and severally liable defendant tolls it as to all, but the tolling is effective with regard only to identical causes of action.") (citation omitted). Here, we easily conclude that the claims in the First Action and the Second Action are identical; both actions are premised upon civil rights violations under § 1983 seeking compensation for the same parties and same tortuous events.

Also, part of the "identicality requirement," as previously stated, is that the subsequent action must be exclusively asserted against the same defendants when "other Puerto Rico tolling statutes do not rescue the claims on other grounds." *Rodriguez,* 570 F.3d at 409. "The solidarity doctrine, rooted in Article 1874 of the Puerto Rico Civil Code 'is based on the theory that there is one obligation, shared by several debtors.'" *Rodriguez,* 570 F.3d at 410 (quoting *Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia., De Puerto Rico, Inc.,* 142 F.3d 1, 6 (1st Cir.1998)).

▆ Under the solidarity doctrine, "the interruption of prescription against one defendant also interrupts the prescription of claims against any other defendants who are solidarily liable with the first." *Tokyo Marine,* 142 F.3d at 4 (citing P.R. Laws Ann. tit. 31, § 5304 and *Arroyo v. Hosp. La Concepcion,* 130 D.P.R. 596, 606, 1992 Juris P.R. 66 (P.R. June 5, 1992)). "Thus, in situations where various defendants are held to be 'solidarily liable' with each oth-

er, this doctrine has been interpreted to allow for the 'timely inclusion of a solidary tortfeasor not originally included in an action.'" *Rodriguez*, 570 F.3d at 410 (quoting *Arroyo*, 130 D.P.R. at 607–08).

 "However, solidarity does not presuppose that the scope or source of liability is identical for each solidary debtor. To the contrary, 'solidarity may exist, even though the creditors and debtors are not bound in the same manner, and for the same periods and under the same conditions.'" *Tokyo Marine*, 142 F.3d at 6 (quoting P.R. Civ. C. art. 1093, P.R. Laws Ann. tit. 31, § 3104). The doctrine exists under Puerto Rico law and applies "when several people take part or cooperate in causing a wrong." *Arroyo*, 130 D.P.R. at 604. The First Circuit has explained that:

> The Puerto Rico Supreme Court has held that "joint tortfeasors are solidarily liable." Under article 1802, when the negligent acts of more than one person have adequately caused a harm, each such person is a joint tortfeasor who is liable in full to the plaintiff for the harm caused.

*Rodriguez*, 570 F.3d at 410 (internal citations and quotations omitted). Hence, the critical inquiry in the case at bar becomes whether Diaz Colon, a party to the Second Action, but not the First Action, is solidarily liable with the Defendants in the First Action. We conclude in the affirmative.

In the Second Action, Plaintiffs named the exact same parties as Defendants as they did in the First Action, including eight unidentified Defendants. The Second Action satisfies the identicality requirement regarding the Defendants. Diaz Colon was included in the amended complaint (Docket No. 7) in his official capacity because he succeeded Figueroa–Sancha as superintendent of the PRPD. Taking part in the chain of events that caused the damages that are being claimed, Diaz Colon is considered a joint tortfeasor, therefore he is solidarily liable for the alleged harm caused to the Plaintiffs.

The identicality requirement allows the inclusion of new defendants if "rescued" on other grounds. Diaz Colon is not barred by the statute of limitations because the filing of the First Action interrupted the statute of limitations for all tortfeasors solidarily liable. Even though Diaz Colon was not included in the First Action, alleged to be a solidary tortfeasor, the statute of limitations was interrupted as to all joint tortfeasors, which includes Diaz Colon. Therefore, the statute of limitations was adequately interrupted on his behalf, therefore the filing of the Second Action was timely as to the Defendants, including Diaz Colon.

## VII. DISMISSAL OF UNKNOWN DEFENDANTS

 Fed.R.Civ.P. 15(c) allows amendments to a complaint in order to correctly identify a defendant. In order for the substitution to relate back to the initial date of filing,

> (1) the amendment must have arisen from the same transaction as the original pleading, (2) the newly-named defendant must have received notice of the claim prior to expiration of the term to serve the complaint, i.e., 120 days from having filed suit, and (3) but for a mistake in identity plaintiff would have named the substituting defendant in the original pleading. The current Puerto Rico provision for amendments to the complaint mirrors its federal counterpart.

*Corey Lanuza v. Medic Emergency Specialties, Inc.*, 229 F.Supp.2d 92, 102 (D.P.R.2002)(citing *Leonard v. Parry*, 219 F.3d 25 (1st Cir.2000)). The rule allows

amendments in order to substitute or identify a party name, relating the amendment back to the date of filing if the amendment complies with the stated requirements.

■ "[I]n order [for unknown defendant] to be found liable, defendant must be properly identified before judgment is entered so that he be given sufficient opportunity to defend. Under those circumstances the substitution will relate back to the date when the complaint was originally filed even if the amendment falls outside the limitations period." *Corey Lanuza*, at 102. Puerto Rico substantive case states that "[u]nless service of the unknown defendant is effected within six months from filing of complaint, or plaintiff justifies an extension of the term, the claims against the unknown defendants shall be dismissed with prejudice." *Corey Lanuza*, at 103 citing *Nunez v. Jimenez*, 22 P.R. Offic. Trans. 126, 132–133, 122 D.P.R. 134 (1988). "[U]nder both the federal and local provisions it is exclusively by virtue of the identification of the unknown defendants in the pleading that the filing of a complaint may have any effect on the statute of limitations. That is, only if and when substitution of a party defendant is authorized because all pertinent procedural requirements have been met that relation back kicks in." *Corey Lanuza*, at 103.

■ As to the instant case, the Unknown Defendants sued in the First Action were never identified during the litigation. As mentioned above, it is by virtue of the proper identification that the filing of the complaint may have an effect on the statute of limitations. Therefore, the filing of the First Action in the instant case did not toll the statute of limitations as to the Unknown Defendants because they were never properly identified. In accordance with Puerto Rico law, the statute of limitation accrues from the moment the aggrieved party could have reasonably become aware of the cause of the injury and the person that caused it. *Colon Prieto v. Geigel*, 115 D.P.R. 232, 234, 15 P.R. Offic. Trans. 313 (1984). *Rodriguez v. Laboy*, 598 F.Supp.2d 186 (D.P.R.2008)(explaining that the "awareness as to the injury and the person that caused it" regarding the accrual of the statute of limitations does not require Plaintiff to know the exact name or circumstances of the tortfeasor).

■ The statute of limitations began to accrue on December 14, 2009, the date when Defendants allegedly invaded Plaintiffs' house and purportedly detained Plaintiffs in violation of their constitutional rights. It was at that moment when Plaintiffs first had knowledge of having suffered an injury and who had caused it. Therefore, at the time of filing the Second Action, Plaintiffs' cause of action was time barred, unless the one-year statute of limitations was tolled. As the Court found previously, with the dismissal of the First Action, there was judicial tolling as to all Defendants. However, that tolling did not extend to those Defendants that were never properly identified in the First Action. The mere filing of original claims against the Unknown Defendants, without their proper identification, did not have the effect of tolling the statute of limitations. For that reason, the claims against all Unknown Defendants are barred by the statute of limitations as the one year statute of limitations period was never tolled; therefore, the statute of limitations had elapsed as to the Unknown Defendants.

Accordingly, the Court hereby **GRANTS** Defendant's motion to dismiss claims against Unknown Defendants.

## VIII. SERVICE OF PROCESS

### i) Failure to comply with service

Rule 4 of the Federal Rules of Civil Procedure governs the service of process

of complaint. In situations where there has been no service at all, the Court "*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed.R.Civ.P. 4(m) (emphasis added). However, courts have the discretion to either dismiss the case without prejudice or order that service be made within a specified time should a plaintiff exhibit good cause.

In the *Motion to Dismiss* (Docket No. 20), Defendants allege lack of jurisdiction because defendant Figueroa–Sancha was not adequately served. The process server attests in his proof of service (Docket No. 13–1) that Figueroa–Sancha was in fact served on July 18, 2011 at the PRPD's headquarters. Defendant Figueroa–Sancha claims inadequate service due to the fact that he had resigned from his position as Superintendent a few days prior, and was thus not physically present at the PRPD facilities on July 18, 2011. (Docket No. 20–1).

The executed summons, signed by the process server, indicates Figueroa–Sancha was personally served at the PRPD headquarters. On the other hand, defendant Figueroa–Sancha denies such service and asserts it to be inadequate due to his previous resignation as Superintendent and physical absence in the PRPD headquarters building at the moment of service of process. Defendant Figueroa–Sancha states his position in written statement under penalty of perjury (Docket No. 20–1).

Rather than have the Court resolve this credibility issue, and in an effort to expedite the resolution of these proceedings, the Court hereby orders that Defendant Figueroa–Sancha make himself available to Plaintiffs' at a mutually agreeable time and location in order for Plaintiff to adequately re-serve Defendant Figueroa–Sancha within the next fifteen days.

### ii) Failure to state good cause

Fed.R.Civ.P. 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court, on motion or on its own after notice to the plaintiff, must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows *good cause* for the failure, the court must extend the time for service for an appropriate period." In order for claim to be dismissed, Plaintiffs must fail to demonstrate good cause.

In the *Motion to Dismiss* (Docket No. 20), Defendant states that good cause cannot be attributed to PRPD's failure to cooperate or disclose information to locate Defendant Officers because PRPD is not party in suit. Defendants are incorrect.

As a result of the initial lack of service, on November 7, 2011, the Court ordered Plaintiffs to show good cause. (Docket No. 12) Plaintiffs justified the lack of service to PRPD's avoidance and failure to locate the Defendants (Docket No. 13). The Court granted Plaintiffs sixty (60) days to effectuate proper service. (Docket No. 17). After the filing of Defendants' Motion to Dismiss, Plaintiffs successfully achieved service of process to Defendants Roman and Padilla. Currently, only one Defendant, Defendant Valls, in addition to Figueroa Sancha, remains unserved.

██ The Court recognizes Plaintiffs' effort and diligence in achieving service of process despite complications in locating officers within the PRPD. Relying upon the Court's judicial experience, the Court is aware of the extreme difficulties that arise from the proper execution of service of process upon members of the PRPD. Plaintiffs, on multiple occasions, requested Defendants' contact information from the

PRPD such as officers' address or work assignment location in order to locate them for service of process. PRPD refused to provide the information requested. Due to PRPD's failure to cooperate, the Court intervened and ordered representatives of the PRPD to accept service of process on behalf of Defendants. Despite the Court's orders, PRPD aggravated Plaintiffs' difficulties by agreeing to cooperate and then refusing to accept service of process on Defendants' behalf. The Court, in its sound discretion, has determined that the difficulties experienced by Plaintiffs in the instant matter, such as the difficulties Plaintiffs faced when serving process to Defendant Roman, constitute good cause as to their failure to properly serve the remaining Defendant.

Finding good cause, the Court hereby **DENIES** Defendants' Motion to Dismiss Defendant Valls for lack of service of process, and ORDERS Plaintiffs to serve Defendant Valls within 15 days at Defendants' expense; or, in the alternative, Defendant Valls may execute a proper waiver of service as established in Rule 4(d) of the Federal Rules of Civil Procedure. Should PRPD not fully and promptly cooperate, the Court is amenable, upon request by Plaintiffs, to order the head of the PRPD Legal Department to produce the home address of Defendant Valls.

---

**3.** Although Diaz Colon and the Unknown Defendants are dismissed from the instant suit in their entirety, the Court will refrain from issuing a partial judgment at this time because the First Circuit strongly disfavors partial judgments as they foster piecemeal review. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); *Zayas–Green v. Casaine,* 906 F.2d 18, 21 (1st Cir.1990) ("This final judgment rule … furthers 'the strong con-

## IX. CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss. The Court hereby **DISMISSES** Plaintiffs' claims against the Unknown Defendants as time barred. Additionally, the Court finds that claims against Defendant Diaz Colon are not time barred because they were adequately tolled, however Diaz Colon, acting in his official capacity, is immune from suit for monetary damages under Eleventh Amendment immunity. Therefore, the claims against Diaz Colon are **DISMISSED WITH PREJUDICE.**

The Court hereby **DENIES** Defendants' Motion to Dismiss regarding Plaintiffs' failure to demonstrate good cause and failure to serve process on Figueroa–Sancha. Furthermore, the Court orders Plaintiffs to re-serve Figueroa–Sancha within 15 days at a mutually agreed upon time and place.[3]

**IT IS SO ORDERED.**

gressional policy against piecemeal review.' ")(quoting *In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980)); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183 (1st Cir.1989); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir. 1988); *Spiegel v. Trustees of Tufts Coll.,* 843 F.2d 38, 43 (1st Cir.1988); *Santa Maria v. Owens–Ill., Inc.,* 808 F.2d 848, 854 (1st Cir. 1986); *see also United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).